UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MONIQUE, II, LTD., a Nevada
Limited Liability Company,

        Plaintiff,

vs.

MAGNUM MARINE CORPORATION,
a Florida corporation,

        Defendant.
_____/

CASE NO.: 00-3041-CIV-KING

MAGISTRATE JUDGE: O'SULLIVAN



### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Monique II, Ltd. opposes the Motion to Dismiss Amended Complaint filed on behalf of Defendant Magnum Marine Corporation, and says:

The Defendant's Motion to Dismiss is symptomatic of the manner in which it has chosen to address this dispute and explains the Plaintiff's frustration. Basically, the Defendant contends that, under the facts of this case, it could very well have delivered to the Plaintiff a box of "Chicklets" for the Plaintiff's $1.5 million purchase price and still avoided all liability, both because the vessel came with an express disclaimer of all warranties thereby precluding any assertion of "non-conformity" under the U.C.C. for lack of any standard against which to measure conformity, *and* because the vessel clearly conformed to the express written and implied warranties issued with it, the non-conformity with which the Plaintiff failed to allege. The arguments are specious and suicidal, and can plainly be shown to be so. Plaintiff will address the Defendant's arguments in the order in which they were raised:



## **No Validity of Assignment**

Defendant's first argument, raised in paragraph 2 of its motion, is that Plaintiff failed to properly allege an assignment of claims from Mike Brown to the Plaintiff. In paragraph 3 of its Amended Complaint, Plaintiff alleges that the Plaintiff, which is a Nevada corporation, was acting at all times material hereto "through its agents, including, but not limited to its owner and President, Mike Brown, who has assigned to the Plaintiff any and all claims personal to him". It is perhaps the most well-established rule of American procedural jurisprudence that, in ruling on a motion to dismiss, all well-pled allegations of a complaint must be accepted as true, and the reviewing court must construe all pleadings in the light most favorable to the Plaintiff. See e.g., Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Mylan Laboratories v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

The case law cited by the Defendant in paragraph 2 of its motion does nothing to undermine the above, nor the legion of cases which stand by its side. In fact, both cases (*Federal Deposit Insurance Corp.* and *Britton*) make the validity of assignment an issue for proof at trial and its purpose is to protect the defendant debtor from double exposure for the same offense. In the instant case, Mr. Brown cannot and need not further identify or allege the extent of his "ownership interest" in any claims assigned because (a) he has not asserted that he necessarily *has any* claims but (b) to the extent he may have claims, and in order to avoid a motion to dismiss on the grounds that one or more claims raised may have been personal to him as opposed to his corporation, Mr. Brown clarified the pleadings by alleging that any and all claims personal to him have been assigned to the Plaintiff. In ruling on a motion to dismiss, the Court must accept this allegation as true. Consequently, there is no possibility the Defendant can face double exposure for the same offense here.

## Plaintiff Seeks an Improper Remedy Under U.C.C.:
## No Claim for Breach of Contract or Warranty is Stated

In paragraph 3 of its motion, the Defendant cites to *Sazerac Company, Inc. v. Falk*, 861 F.Supp. 253 (S.D. N.Y 1994) and *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429 (7th Cir. 1993) for the proposition that, in ruling on its motion to dismiss, this Court may consider three documents the Defendant attached to its motion that the "Plaintiff and its lawyers...**omitted**" from the Amended Complaint (emphasis original). First of all, *Venture Associates*, which the Defendant cites, expressly notes that the Plaintiff has no obligation to attach any documents to its complaint, even if its complaint is based on one or more documents. *Venture Associates*, 987 F.2d at 431. Accordingly, there is nothing sinister about the "Plaintiff and its lawyers **omitting**" any exhibits to the Complaint. Second, the Plaintiff and its lawyers did in fact attach to the Amended Complaint a copy of the contract on which this claim is based. The Defendant's gripe is that the Plaintiff did not also attach to its Amended Complaint copies of three documents executed more than 13 months after the contract was executed, the effect and significance of which is greatly disputed.

Third, *Venture Associates* notes that exhibits attached to a Defendant's motion to dismiss may be considered "only if they are referred to in the plaintiff's complaint and are essential to [its] claim". *Id.* The three documents attached to the Defendant's motion to dismiss are a "Statement of Acceptance", "Magnum's Limited Warranty" and a "Power of Attorney". None of the above is referenced in Plaintiff's Amended Complaint and, while they may be "essential" to the Defendant's defense, they are hardly "essential" to the Plaintiff's claims. Finally, *Sazerac Company*, also cited by the Defendant in support of this argument, states that "Rule 12(b)(6)...imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant

3

demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" (citations omitted)" *Sazerac*, 861 F.Supp. At 257. The Defendants in this case have not done so.

Perhaps in recognition of the above, the Defendant and its attorneys have surreptitiously suggested to the Court that the exhibits attached to their motion were actually part of the contract originally signed but that the Plaintiff and its laywers had conveniently detached them from the contract attached to the Amended Complaint. In charging the "Plaintiff and its lawyers" with having **omitted** from the Amended Complaint "Magnum's Limited Warranty" and the "Statement of Acceptance" attached to its motion, the Defendant references the Court to footnote 4 on page 2 of Defendant's motion. Footnote 4 calls the Court's attention to the fact that contract attached as Exhibit "A" to the Plaintiff's Amended Complaint states on its face that it was "subject to the terms & conditions on the reverse side". The Defendant's apparent suggestion, however subtle, is that the "reverse side" of the contract contained "Magnum's Limited Warranty" and "Statement of Acceptance". [What else could be the purpose of the notation?]. The fact of the matter, however, is that the "Magnum Limited Warranty" and the "Statement of Acceptance" clearly could not have been on the "reverse side" of the contract because the contract was signed October 30, 1998, while the other two documents were signed on December 17, 1999. As far as the Plaintiff knows, and as alleged, the "reverse side" of "page 1 of 2" was "page 2 of 2", a copy of which is attached as the second page to Exhibit "A" to the Amended Complaint.

In accordance with the above, it would be improper for this Court to consider the documents attached as exhibits to the Defendant's motion to dismiss, and the entirety of the arguments advanced in paragraphs 3 through 13 of its motion to dismiss should be rejected on that basis alone. The

4

documents on which the Defendant relies for virtually three-fourths of its argument are neither central nor essential to the Amended Complaint against it.

In addition, paragraphs 3 through 13 are riddled with incongruous (mis)applications of fact to law. For example, in paragraph 5 the Defendant argues that the "remedy of revocation...for non-conformity is not available [because there was] a valid disclaimer of all warranties," *citing to McCormick Machinery, Inc. v. Julian E. Johnson & Sons, Inc.*, 523 So.2d 651, 656 (Fla. 1st DCA 1988). First, assuming this Court were to consider "Magnum's Limited Warranty" attached to the Defendant's motion to dismiss, it is tautological to point out that a "limited warranty" cannot possibly constitute a "disclaimer *of all warranties*" (emphasis supplied). *McCormick* stands merely for the proposition that where there is a disclaimer of *all warranties*, a product cannot be rejected as "non-conforming" because there is no standard of conformity against which to measure conformance. In the instant case, either there was no disclaimer of warranties or, at the most, there was a *limited* disclaimer to the extent set forth in the "Limited Warranty".[1] Either way, there is a standard of conformity against which to measure and rule upon Plaintiff's rejection of the vessel for non-conformity with that standard.

In paragraph 6, the Defendant gratuitously recites that the warranty here [assuming again that the Court is not only entitled to consider "Magnum's Limited Warranty", but is bound to assume it valid and binding] provided for the remedy of repair and replacement and therefore did not fail of its essential purpose. What the Defendant fails to take into account, however, is that the Defendant is either unwilling or unable to repair or replace the vessel. *See* Amended Complaint at pps. 14-16, 19,

---

[1] As an aside, Plaintiff notes that the supposed "Limited Warranty" acknowledges the existence of "implied warranties". *See* Paragraph 6 of the warranty quoted in paragraph 4 of Defendant's motion.

5

24-32 and 35. *See also* paragraphs 39 and 40 wherein Plaintiff alleges that, in addition to being unable or unwilling to repair the vessel, the Defendant has refused to replace it or refund Plaintiff's purchase price. Again, all well-pled allegations of the Amended Complaint must be accepted as true, and therefore the relevance and cogency of Defendant's assertion that the "Limited Warranty" did not fail of its essential purpose is difficult to apprehend.

In paragraph 7, the Defendant makes the undisputed assertion that goods are "conforming" under the UCC provided they conform to the terms of the contract pursuant to which they were purchased. Defendant then makes the incredible assertion that "no predicate contract is alleged..." To the contrary, paragraph 8 of the Amended Complaint makes reference to the "predicate contract", a copy of which is attached as Exhibit "A". Moreover, contracts made under the UCC come with certain implied warranties unless expressly disclaimed, all of which would make for a standard against which to determine whether the vessel was "conforming" and, even if some of those implied warranties were disclaimed by the "Limited Warranty", there is still a contract for a boat and a limited warranty on that boat, which would provide *some* standard against which to measure conformity.

But again, the Defendant's position is that it could have sold Plaintiff a box of "Chicklets" and still avoided all liability, both because the vessel came with an express disclaimer of all warranties thereby precluding any assertion of "non-conformity" under the U.C.C. for lack of any standard against which to measure conformity, *and* because the vessel clearly conformed to the express written and implied warranties issued with it, the non-conformity with which the Plaintiff supposedly failed to allege. After all, if there is no standard of conformity, then a box of "Chicklets" would satisfy Defendant's obligations under the contract as well as a boat built pursuant to its specifications and that could actually float without sinking. Plaintiff has alleged non-conformity (paragraphs 34 and 35)

6

and, for the purposes of ruling on a motion to dismiss, this Court must accept those allegations as true.

In paragraph 8 of its motion, Defendant argues that Plaintiff failed to alleged "any specific *noncomformity* that *substantially impaired* the value of the boat (emphasis original)". To the contrary, see paragraphs 11, 14 and 16 of the Amended Complaint, Exhibits "B" and "C" expressly incorporated by reference therein, paragraph 34 which expressly incorporates and restates the allegations made in paragraphs 11, 14 and 16, and paragraph 35. *See also*, Exhibit "D" to the Amended Complaint. Plaintiff alleges specific defects set forth in survey reports attached and in a letter attached as exhibits as well as further described in the Amended Complaint, and specifically alleges (in paragraph 34) that as a result of these specific defects, "the value of the boat was substantially impaired".

Similarly in paragraph 9 of its motion, Defendant makes the incredible assertion, subject to Rule 11 sanctions, that the Plaintiff failed to allege notification to the Defendant of its revocation of acceptance as required by Fla.Stats.§ 672.608(2). That section reads in relevant part as follows:

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.

Paragraph 17 of the Amended Complaint alleges the following:

> In the meantime, and for the express purpose of preserving its rights in a timely fashion, Plaintiff sent Defendant a letter on January 20, 2000 rejecting the vessel under Fla.Stats.§672.602, **revoking any actual or purported acceptances under §672.2095 and §672.608**, and offering to let the Defendant survey and inspect the vessel pursuant to §672.515. A copy of the letter is attached [to the Amended Complaint] as Exhibit 'D' (emphasis supplied).

The Defendant's representation to this Court is simply false and it, and the rest of the

7

Defendant's arguments, invite the imposition of Rule 11 sanctions. It is as if the Defendant and its counsel filed the motion without even reviewing the Amended Complaint.

In paragraph 10 of the motion, the Defendant argues that no revocation for non-conformity is available where a valid disclaimer of warranty exists. Again, not even the Defendant maintains that all warranties were expressly disclaimed. It is the Defendant's [contested] position that the Limited Warranty attached as an Exhibit to his motion is part of the contract at issue. Accordingly, as there is no disclaimer of all warranties, the argument set forth in paragraph 10 of Defendant's motion is inapposite.

The argument set forth in paragraph 11 of the Defendant's motion, again, is contingent not only upon this Court's consideration of documents attached as an exhibit to his motion and not part of the Amended Complaint, it requires the Court to accept their validity and applicability. However, if, for example, the Plaintiff is entitled to rescission or revocation, such exhibits are invalid and inapplicable *even if they are deemed part of the contract*. Even worse, the Defendant misreads its own warranty by averring that none of the matters complained about were covered in the "Sales Agreement" or "Limited Warranty", but were in fact "expressly excluded by a disclaimer in the [Limited] Warranty" (emphasis omitted). First, Plaintiff clearly lodged complaints about the hull in paragraphs 14, 15, 16, and Exhibits "B", "C" and "D" to the Amended Complaint. Moreover, the "Limited Warranty", even assuming it applies, hardly constitutes a "disclaimer" of the implied warranties of merchantability or of fitness for a particular purpose because it states in paragraph 6 that "THE DURATION OF ANY IMPLIED WARRANTY OF MERCHANTABILITY OR WARRANTY FOR FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE, SHALL BE LIMITED TO AND COINCIDENT WITH THE DURATION OF THIS EXPRESS WARRANTY".

This hardly constitutes the "express exclusion by disclaimer" of all warranties as characterized by the Defendant in paragraph 11 of its motion.

With respect to paragraph 12 of the motion, damages for loss of use can be recovered provided they relate to a charter of the vessel or would otherwise have generated profit for the owner. *See Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373,1376 (11th Cir. 2000). This is called "demurrage" and "is a proper element of damage". Id. Plaintiff's reference to loss of use refers to this demurrage, and not to loss of personal use to the Plaintiff.

Defendant's argument in paragraph 13 of its motion that incidental and consequential damages cannot be recovered because they were excluded by the warranty is, of course, contingent upon its proving that the warranty is a valid, binding part of the contract--an issue which is in some dispute. Again, this "limited warranty" was unilaterally issued by the Defendant to the Plaintiff's agent 13 months after the contract was signed and without any consideration. It never comes into play if the contract itself is rescinded and, absent the "limited warranty" the effect and significance of which the Plaintiff denies, the Plaintiff is entitled to incidental and consequential damages pursuant to Fla.Stats.§§672.714 and 672.715.

With respect to paragraph 14 of the motion, the Amended Complaint does not demand punitive damages *per se*, but seeks them "upon a proper evidentiary showing". The purpose of the allegation is to put the Defendant on notice, but the Plaintiff has not sought and will not seek any discovery related thereto unless and until that showing is made and approved by the Court.

With respect to paragraph 15, the *Turner v. Fitzsimmons* case cited by the Defendant holds that the court may grant rescission where restoration to pre-agreement status quo is impossible, so long as the equities be balanced. Defendant's argument is that Plaintiff fails to state a cause of action

9

because Plaintiff has not alleged both that the parties can be returned to their pre-agreement status *and* that the equities can be balanced. *Turner v. Fitzsimmons* sets forth the two possible remedies in the disjunctive, not the conjunctive. One (restoration to *status quo*) or the other (balanced equities), must be available, not both. The fact of the matter is that the parties can be returned to their pre-agreement status because the Defendant can return to the Plaintiff his money and the Plaintiff can, and already has, returned to the Defendant its "boat". [After all, there position is that the boat is in great shape and has many suitors]. Even so, the issues raised in the motion are issues for proof at trial, and the Defendant has cited to no case law standing for the proposition that, to seek rescission, Plaintiff must allege that the parties can be returned to their status quo *and* that the equities can be otherwise balanced. Again, the *Turner* case states just the opposite. The resolutions are in the disjunctive, not conjunctive, and rescission can be awarded where either can be met. Clearly, either can be met in this case. Also, Plaintiff has every right to pursue inconsistent remedies (rescission or damages), as it has done, right up until the time judgment is entered. *See Barbe, III v. Villeneuve*, 505 So.2d 1331, 1333-1334 (Fla. 1987)("an election between legally inconsistent remedies can be made at any time prior to entry of judgment"). Plaintiff seeks to rescind but, in the event the Court denies that relief, Plaintiff intends to pursue its remedies under contract. In the meantime, Plaintiff has done nothing inconsistent with either remedy or that would deprive it of the right to seek both remedies simultaneously for the time being.

The undersigned counsel is wholly at a loss to understand the Defendant's argument in paragraph 16 that incidental and consequential damages are not available under Fla.Stats.§§672.714 (1), (3), and 672.715 (1) and (2). Those sections do nothing but make incidental and consequential damages available, and define the extent of their scope.

10

## No Settlement Agreement or Breach

In paragraph 17 of its motion, Defendant cites *Murchison v. Grand Cypress Hotel Corp.*, 13 F.2d 1483 (11th Cir. 1994) for the proposition that enforcement of an alleged settlement agreement is improper where there is a substantial factual dispute as to the terms of the agreement. It was precisely in anticipation of this argument that the undersigned counsel accepted the proposal of the Defendant's counsel (attached as Exhibit "E" to the Amended Complaint) by signing it at the bottom instead of accepting it by separate letter: so there could be no possibility of any dispute as to the terms proposed and agreed to. The terms were set forth by counsel for the Defendant. They are clear and, for the most part, unambiguous. To the extent there is an ambiguity, it would of course be construed against the Defendant as the drafter.

Under these circumstances, it can hardly be said that "there is a substantial factual dispute as to the terms agreed to". Opposing counsel proposed them and Plaintiff accepted them. Plaintiff's supposed failure to comply with its obligations under the settlement agreement or the Defendant's failure to fully comprehend the obligations it expressly undertook might be asserted as an affirmative defense, but Plaintiff had and has no obligation to allege in Count I that it returned the vessel to the Defendant or had the vessel surveyed at its expense. To the extent it matters, the undersigned represents to this Court that the Plaintiff has done both. Finally, and as set forth above in the case law cited by the Defendant, the Plaintiff has no obligation to attach any documents to its complaint and, to the extent the Defendant believes the documents referenced in paragraphs 28 - 30 of the Amended Complaint are central, or even relevant, it is clear that the Defendant is not at all shy about attaching documents to its own motion to dismiss.

Defendant's argument in paragraph 18 is simply a misrepresentation of the pleadings and an

11

argument based on disputed issues of material fact. If the Defendant wants the Court to construe Exhibit "E" as a matter of law to determine whether it constitutes a contract, then so be it. But, to date, he has only alleged that there is a "substantial dispute" as to its meaning. At this stage of the pleadings, such dispute must be resolved in favor of the Plaintiff.

### No Case or Controversy

This is perhaps the most incredible of the Defendant's assertions. As alleged, the Plaintiff signed a contract in October of 1998 agreeing to pay over $1.5 million for a high performance motor yacht to be delivered in late 1999. As alleged, the "boat" is a piece of junk; it is unseaworthy, it is unstable, it is falling apart. It cannot be used. It has not been used. Defendant has failed and refused to return the Plaintiff's money, has failed and refused to repair the boat, has failed and refused to do ***anything*** to resolve this matter except stall and delay, making one promise after another which the Defendant's owner, Katerine Theodoli, has refused to commit to writing. Her counsel, who finally did commit to writing promises made on her behalf (*see* Exhibit "E" to the Amended Complaint), not denies in his motion that she or he made any promises or agreed to do anything to resolve this matter, thus: no case, no controversy.

Plaintiff provided the Defendant with notice of the defects by letter dated January 20, 2000, shortly after delivery, and by verbal notification well before that. Nonetheless, Defendant's counsel baldly asserts in paragraph 19 of his motion that there is no case or controversy, in part, because "Plaintiff **still has not** provided reasonable notice and opportunity for repair..." To the contrary, it was upon receipt of such notice and consonant with the Settlement Agreement that the Defendant agreed to dispatch someone to the Tortola's (where the boat was then located) to see if it could be returned under its own power. As alleged, Magnum never did. As alleged, the Plaintiff has done

everything within its power to resolve this matter. It has made its demands in equity for rescission. At the same time it has pursued and is pursuing its claims in contract. It has attempted to negotiate a settlement agreement, pursuant to which and in good faith, it even dismissed an earlier action to give the Defendant yet another opportunity to do *something*, **anything**, to avoid litigation and resolve the dispute.

Nonetheless, Defendant has done nothing, and if no case or controversy exists now, then no case or controversy could ever exist between these two parties regarding the contract and the "vessel" in question. Plaintiff has alleged a causal relationship between the Defendant's wrongful acts and the Plaintiff's damages. Plaintiff has alleged timely notice and a demand for rescission which the Defendant has refused. Plaintiff has demanded remedy, replacement or repair--all of which has been to no avail. It is obvious, however, that the Defendant has no intention of doing anything in response unless and until ordered to do so by this Court. The Defendant's application of the alleged facts to the applicable law in this case is so incongruous the undersigned can only conclude that when Defense counsel was preparing his motion he reached into the wrong package of forms and pulled out a form motion prepared for another case. They simply allege that we failed to comply with every requirement of the U.C.C. That all warranties were disclaimed. That we failed to allege non-conformity with the warranties issued. That they have not agreed to do anything and have not done anything. That they have complied with all their obligations. And that there is no case or controversy for this Court to decide.

Again, the motion is symptomatic of the approach taken by the Defendant and its counsel in this case, which is to stall and delay, to drive up the Plaintiff's legal costs and blood pressure, and to indiscriminately toss out the back of the van in which they are attempting to make their escape,

13

anything they think might puncture the tires of the Plaintiff's vehicle which remains in hot dispute.

Finally, the Plaintiff did allege a statutory basis for his attorney's fee and cost demand: Fla.Stats.§ 57.105.

WHEREFORE, the Defendant's Motion to Dismiss Plaintiff's Amended Complaint should be denied in its entirety.

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile transmission this 14th day of October, 2000 and will be served by U.S. Mail on the 16th day of October, 2000, upon George O. Mitchell, Esq., GEORGE MITCHELL & ASSOCIATES, Attorneys for Defendant, 2650 Biscayne Blvd., Miami, FL 33137-4531 (fax) (305) 576-0771.

BOSSHARDT & EDWARDS, P.A.
Attorneys for Plaintiff
HSBC Building
1600 S.E. 17th Street Causeway
Suite 405
Ft. Lauderdale, FL 33316
(t) (954) 764-7772
(f) (954) 764-8176

By: _____
Robert R. Edwards, Esq.
Fla. Bar No. 770851

14